

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| G.M. SIGN, INC., individually and as the representative of a class of similarly-situated persons, ) ) ) ) ) | |
| Plaintiff, ) ) | No. 08 C 7106 |
| v. ) ) | The Honorable William J. Hibbler |
| MFG.COM, INC., ) ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

G.M. Sign, Inc. alleges that MFG.com, Inc. sent it a one-page, unsolicited advertisement via facsimile. On the basis of this allegation, G.M. Sign initiated this lawsuit, asserting that MFG.com is liable to it and a class of other recipients of such faxes on three different theories: 1) that sending the fax violates the Telephone Consumer Protection Act ("the TCPA"), 47 U.S.C. § 227; 2) that sending the fax violates the Illinois Consumer Fraud and Deceptive Business Practices Act ("the ICFA"), 815 ILCS 505/2; and 3) that, by causing the advertisement to be printed by the fax machines of G.M. Sign, Inc. and the purported class members, MFG.com committed the common law tort of conversion. MFG.com moves to dismiss all three of G.M. Sign's claims. For the reasons set forth below, the Court denies the motion.

### *BACKGROUND*

In its Complaint, G.M. Sign alleges that MFG.com sent it a one-page advertisement. (Compl. ¶ 11, Ex. A). The advertisement promoted a "Free Service to Buyers," and access to "Suppliers in hundreds of manufacturing disciplines all over the world...Rated by our Community of 100,000 Buyers." (Compl. Ex. A). It included labeled illustrations of a number

1

of manufacturing products such as laser cutters, welders, and molders. (Compl. Ex. A). The advertisement did provide a method for the recipient to request via telephone or fax that it be excluded from future dissemination of such advertisements. (Compl. Ex. A). G.M. Sign alleges that it had not invited or given permission to MFG.com to send such advertisements. (Compl. ¶ 12). G.M. further alleges that MFG.com faxes the same and similar advertisements to more than 39 other recipients without permission or invitation. (Compl. ¶ 13). Finally, G.M. Sign alleges that there is no reasonable means for the class members to avoid receiving such faxes because fax machines are typically left on so that they are ready to receive urgent communications. (Compl. ¶ 14).

## *DISCUSSION*

Motions to dismiss test the sufficiency, not the merits, of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss under federal notice pleading, a plaintiff must "provide the grounds of his entitlement to relief" by alleging "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal quotation marks, brackets, and citation omitted). Specific facts are not necessary. *Erickson v. Pardus*, 551 U.S. 89, ----, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).[1] The Court treats well-pleaded allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Disability Rights Wisc., Inc. v. Walworth County Bd. Of Supervisors*, 522 F.3d 796, 799 (7th Cir. 2008).

---

[1] Although Fed. R. Civ. P. 9(b) requires specific pleading for claims of fraud, G.M. Sign does not allege that MFG.com violated the ICFA with a fraudulent practice, but rather with an unfair business practice. Thus, G.M. Sign's ICFA claim does not fall within the ambit of Rule 9(b)'s heightened-pleading requirement. *Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

2

## I. Telephone Consumer Protection Act

MFG.com argues that G.M. Sign's TCPA claim should fail because the fax that it received from MFG.com does not fit the statutory definition of an "unsolicited advertisement." The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). MFG.com argues that the fax at issue advertised only free services, and thus requests that the fax was not advertising the *commercial* availability of property, goods, or services.

In making its argument, MFG.com focuses on the meaning of the word "commercial" and draws support from two District Court decisions dismissing TCPA claims because the faxes at issue were not "commercial" in nature. *See Phillips Randolph Enters., LLC v. Adler-Weiner Research Chi., Inc.*, 526 F. Supp. 2d 851, 853 (N.D. Ill. 2007); *Ameriguard, Inc. v. Univ. of Kan. Med. Ctr. Research Inst., Inc.*, No. 06-0369-CV-W-ODS, 2006 WL 1766812, at *1 (W.D. Mo. June 23, 2006). MFG.com argues that the plain meaning of the term "commercial" is "of or relating to the buying and selling of goods." It then asserts that because its fax only advertised the availability of a service which was free to the recipient of the fax, it could not be commercial.

However, this Court finds that this motion cannot be resolved by simply looking to the plain meaning of the statute. Congress has not spoken directly on the issue of whether advertisements for free services can be unsolicited advertisements under the TCPA. Thus, the Court will accept a permissible construction of the statute by the Federal Communications Commission (FCC), the agency which administers the TCPA. *Chevron U.S.A., Inc. v. Natural*

3

*Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S. Ct. 2778, 2782, 81 L. Ed. 2d 694 (1984).

According to the FCC, faxes "that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, are unsolicited advertisements under the TCPA's definition." *In re Rules and Regs. Implementing the Tel. Consumer Protection Act of 1991 and the Junk Fax Prevention Act of 2005*, 21 F.C.C.R. 3787, 3814 (Apr. 6, 2006). While the FCC recognizes that a purely informational newsletter or publication is not an unsolicited advertisement, it "emphasize[s] that a newsletter format used to advertise products or services will not protect a sender from liability" and underscores that the distinction between the two must be made on a case-by-case basis. *Id.* at 3814-15. MFG.com's services are akin to a publication which "itself may be offered at no cost to the facsimile recipient, [while] the products promoted within the publication are often commercially available." *Id.* at 3814. The FCC recognizes such publications as unsolicited advertisements which describe the "quality of any property, goods, or services." *Id.*

The Court finds the FCC's construction of the statute to be reasonable and consistent with the language of the statute. Congress expressed an intent to regulate materials advertising the commercial availability or quality of any property, goods, or services. 47 U.S.C. § 27(a)(5). The agency's construction includes advertisements for services which are ostensibly free but which merely direct the fax recipient to a forum for buying and selling products and services. While the initial service offered by such an advertisement may indeed be free, it is clear that such a fax is intended to induce the recipient to take advantage of the commercial availability or quality of goods and services in that forum.

In fact, the agency's construction is actually consistent with MFG.com's proposed definition of commercial. MFG.com's fax promoted an online marketplace where it hopes to connect buyers and sellers of manufacturing goods and services. Certainly this is a purpose which is "of or relating to the buying and selling of goods."

This Court is not persuaded by Defendant that the fax in question is similar to those involved in *Phillips Randolph* and *Ameriguard*, which dealt with requests for participants in a research discussion group and clinical trials, respectively. *Phillips Randolph*, 526 F. Supp. 2d at 853; *Ameriguard*, 2006 WL 1766812, at *1. While it may be true that MFG.com does not charge potential buyers for its services, this does not make its for-profit, online marketplace analogous to a clinical drug trial for which participants are compensated. Instead, the fax at issue is more analogous to the free publications described by the FCC, as noted above, and the fax advertising a training session which was presumably then used to promote goods in *Stonecrafters, Inc. v. Almo Distrubting New York, Inc.*, 07 C 5105 (N.D. Ill., July 23, 2008).

The Court cannot find at the pleading stage that the fax at issue falls outside the statutory definition of "unsolicited advertisement." Thus, MFG.com's motion to dismiss G.M. Sign's TCPA claim is denied.

## II. Illinois Consumer Fraud & Deceptive Business Practices Act

MFG.com also argues that sending the fax at issue did not rise to the level of an "unfair practice" under the test set forth by the Illinois Supreme Court in *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 775 N.E.2d 951 (2002). *Robinson* directs courts to weigh three factors when determining whether a practice is unfair: 1) whether it offends public policy; 2) whether it is immoral, unethical, oppressive, or unscrupulous; and 3) whether it causes substantial injury to consumers. *Id.* at 417-18, 775 N.E.2d at 960-61. A practice need not meet

all three factors to be unfair; it may meet one to a substantial extent or all three to a lesser degree. *Id.* at 418, 775 N.E.2d at 961.

MFG.com bases its argument regarding the first factor entirely on the idea that the fax is not an unsolicited advertisement and therefore that sending did not violate the TCPA. Having denied MFG.com's motion to dismiss the TCPA claim, the Court finds that this argument fails. As this Court has stated in the past, the TCPA and Illinois state law make clear that the sending of unsolicited fax advertisements offends public policy. *Pollack v. Cunningham Fin. Group, LLC*, 2008 WL 4874195, at *2 (N.D. Ill., June 2, 2008); *see also* 720 ILCS 5/26-3. G.M. Sign has therefore pled sufficient facts to meet this factor of the *Robinson* test.

MFG.com also argues that G.M. Sign failed to plead that MFG.com's conduct was oppressive. MFG.com relies on two cases, *Western Ry. Devices Corp. v. Lusida Rubber Prod., Inc.*, 2006 WL 1697119, at *5-*6 (N.D. Ill. June 13, 2006) and *Rossario's Fine Jewelry, Inc. v. Paddock Publications*, 443 F. Supp. 2d 976, 979 (N.D. Ill. 2006), for support for the proposition that a single, one-page fax that contains an opt-out notice cannot be oppressive. The logic set forth in *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892, at *7 (N.D. Ill. May 27, 2008), the Court that "[e]ven if a recipient of an unsolicited fax can later remove himself from the possibility of receiving future faxes, this does nothing to compensate the recipient for the injury that has already resulted from the receipt of the fax in the first place." *See also Pollack*, 2008 WL 4874795, at *2 (taking into consideration the ineffectiveness of opt-out notices in compensating injuries already incurred); *cf. Tudor v. Jewel Food Stores, Inc.*, 288 Ill.App.3d 207, 211, 681 N.E.2d 6, 8-9 (3d Dist.1997) (finding that grocery store overcharges were not oppressive because customers were issued receipts and money-back guarantees for errors). Thus, at least at this stage of the proceedings, an opt-out notice will not defeat an ICFA claim.

MFG.com also argues that G.M. Sign's complaint fails to allege substantial injury. MFG.com argues that the harm caused by a single, one-page faxed advertisement is minimal and that the aggregate harm to a proposed class cannot be taken into account in making a determination under the ICFA. A virtually identical argument was made to this Court and rejected in *Pollack*, 2008 WL 4874795, at *3 (citing *Centerline Equip. Corp. v. Banner Personnel Serv. Inc.*, 545 F. Supp. 2d 768, 780-781 (N.D. Ill. 2008)). The Court once again holds that for the purpose of stating a claim, G.M. Sign may rely on allegations of harm in the form of materials and employee time lost despite the fact that these damages might be small for G.M. Sign alone. This is because the ICFA requires that a plaintiff only plead actual damages on an individual level so long as it can plead substantial harm to consumers generally. *Centerline*, 545 F. Supp. 2d at 781 (rejecting the Court's construction of the ICFA in *Lusida*, 2006 WL 1697119, at *6).

G.M. Sign has thus met all three factors of the *Robinson* test, and MFG.com's motion to dismiss the ICFA claim is denied.

### III. Conversion

Finally, MFG.com argues that the Court should dismiss G.M. Sign's common law conversion claim, focusing once again on the fact that G.M. Sign has alleged what MFG.com perceives to be *de minimis* damages for each individual class member. As stated by the court in *Centerline*, 545 F. Supp. 2d at 782, an opinion adopted by this Court in *Pollack*, 2008 WL 4874795, at *3, this argument will not defeat G.M. Sign's class action conversion claim at the pleading stage, and MFG.com's motion to dismiss the claim is denied.

### *CONCLUSION*

For the above reasons, MFG.com's motion to dismiss is DENIED.

IT IS SO ORDERED.

<u>4/24/09</u>
Dated

<u>Wm. J. Hibbler</u>
Hon. William J. Hibbler
United States District Court